1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

KEITH L. NASH,

Case No. C06-5127 RJB/KLS

12

Plaintiff,

13

v.

REPORT AND
RECOMMENDATION

14

DOUG WADDINGTON, *et al*.,

**NOTED FOR:**
**February 15, 2008**

15

Defendants.

16      Before the Court is Defendants' motion seeking summary dismissal of Plaintiffs' claims. (Dkt.

17   # 121).  Plaintiff alleges that Defendants violated his First and Fourteenth Amendment rights of access

18   to courts and that they retaliated against him.  (Dkt. # 18).

19      In support of their motion, Defendants submit the Declarations of Karen Thompson (Dkt. #

20   121, Exh. 1), Belinda Stewart (*Id*., Exh. 2), Jennifer Jiminez (*Id*., Exh. 3), and Amanda M.

21   Migchelbrink (*Id*., Exh. 4).  Plaintiff submits his statement of genuine material facts in opposition

22   (Dkt. # 178, Attach. 1), supported by his Declaration (*Id*., Attach. 2), with supporting documents and

23   the Affidavit of Charles Lidge.  (*Id*., Exh. 1-43[1]).  Plaintiff also relies upon his Amended Complaint

24   and sworn Declaration.  (Dkt. # 18 and 19).

25

26      _____

27      [1]The CM-ECF docket entry at Dkt. # 178 incorrectly notes Exhibits 1-42.  However, there
     are 43 exhibits attached to Plaintiff's Declaration, which is Attachment 2 to Dkt. # 178.

28   REPORT AND RECOMMENDATION - 1

1  Defendants filed a reply (Dkt. # 177[2]), with the Declarations of Amanda M. Migchelbrink (*Id*.,

2  Exh. 1) and Risa Klemme (*Id*., Exh. 2).  Plaintiff submits a surreply and his Declaration.  (Dkt. # 181).

3  After careful review of the motion, the parties's submissions, balance of the record, and viewing the

4  facts in the light most favorable to the Plaintiff, the undersigned recommends that Defendants are

5  entitled to summary dismissal of the claims against them.

### I.  FACTS AND PLAINTIFF'S ALLEGATIONS

7  Plaintiff's claims are against Keven Shanahan, a former grievance coordinator for the

8  Stafford Creek Corrections Center (SCCC); Doug Waddington, former Superintendent of SCCC;

9
10  Keith Meyer, a Corrections Unit Supervisor at SCCC; Dennis Dahne, a Sergeant at SCCC; Charles

11  Rohrer, a Corrections Officer 2 at SCCC; Matt Strong, a Correctional Officer 2 formerly at SCCC;

12  Jennifer Jimenez, a Correctional Officer 2 at SCCC; Gayl Stroup (formerly Wertanen), a

13  Correctional Officer 2 at SCCC; Mark Barnufsky, a Correctional Officer 2 at SCCC; Donald

14  Carlstad, a Correctional Officer 2 at SCCC; Aaron Johnson, a Correctional Officer 2 at SCCC; and

15
16  Elaine Mortimeyer, a former Correctional Officer 2 from SCCC who is no longer employed by

17  DOC. (Dkt. # 18).

18  Plaintiff was transferred to the SCCC on January 5, 2005.  (Dkt. # 121, Exh. 1, Attach. A, p.

19  2).  He was transferred to the Intensive Management Unit (IMU) of the SCCC on March 29, 2006.

20  (*Id*.)  Plaintiff was then transferred to the IMU at the Airway Heights Corrections Center (AHCC)

21  on May 15, 2006.  (*Id*.).  Plaintiff was released from prison on November 10, 2007.  (Dkt. # 186,

22  Exh. 1, Attach. C).

23  A.    **Legal Mail Processing Claim - DOC Policy 450.100**.

24
25  Offenders may send and receive legal mail to certain individuals and entities.  (*Id*., Exh. 2,

26
27  [2]Defendants' motion to strike Plaintiff's response and exhibits as untimely was denied under separate Order.

28  REPORT AND RECOMMENDATION - 2

Attach. A, DOC Policy 450.100, *Mail for Offenders*).  Legal mail may be sent to or from courts and court staff, attorneys, the President, state attorneys general, governors and law enforcement officers. (*Id*. at 6). The mail has to be presented to a staff member so it can be scanned for contraband. (*Id*. at 8). Once it is determined that the mail is free of contraband, the inmate places the documents in the envelope and seals it. (*Id*.).  The staff member signs the flap and seals it with tape and the inmate places the envelope in the mail. (*Id.*).

When an inmate wishes to have mail sent out via legal mail within SCCC he has to fill out the envelopes and have them properly addressed so they can be logged in and processed. (*Id*., Exh. 3).  When Plaintiff requested to have his legal mail processed on the night shift, he had a large amount of legal mail. (*Id*.).  Plaintiff was provided with all of the envelopes he would have needed for his legal mail; however, he failed to have any of this paperwork ready when he approached the officer to process it. (*Id*.).  The officer assisting Plaintiff worked with him as best she could; however, she was called away with a more pressing task. (*Id*.).  She informed Plaintiff that she could not continue to assist him at that time, but she would assist him again when she could. (*Id*.). Instead of taking steps to fill out the necessary envelopes and paperwork, the Plaintiff opted to fill out grievances. (*Id*.).

Plaintiff was told to fill out the necessary paperwork and have it ready for the next shift to process because there was limited staff and 135 inmates on the unit at that time and there were greater security concerns to see to. (*Id*.).  Plaintiff's legal work was completed on the next shift. (*Id*.).

At the time in question, Plaintiff had three pending court cases - Case No. 04-5161FDB, 04-5287RBL, and 04-5785FDB.  (Dkt. # 178, Attach. 2, p. 1).  Plaintiff claims that Defendants' implementation of DOC policy 450.100 impeded and infringed on his right of access to the courts

REPORT AND RECOMMENDATION - 3

when a filing to the Ninth Circuit was never mailed, when two officers refused to process his mail and he was forced to find other assistance to complete a timely filing, when he was unable to perfect service on a defendant in Case No. C04-5785FDB, and when he was prevented from seeking an extension of time for more discovery in Case No. C04-5287RBL, leading to the eventual dismissal of that case.  (Dkt. # 178, pp. 16-17).

**B.     Access to Legal Materials and Law Library - DOC Policy 440.000**

Offenders may keep one box of legal materials in their cell at any given time. (Dkt. # 121, Exh. 2, Attach. B, DOC Policy Directive 440.000, *Personal Property for Offenders*).  The box measures 12"x10"x18". (*Id.*). Exceptions to the policy may be granted only upon written request to the Superintendent. (*Id.*). Legal materials are limited to maintain adequate sanitary conditions, meet storage space, reduce fire hazards and provide reasonable ease for conducting security inspections. (*Id.*, Exh. 2, Attach. C, DOC Policy Directive 590.500, *Legal Access for Offenders*). The Superintendent may also limit an individual's access to legal materials based on the inmate's behavior, security and other security issues in the unit. (*Id.*).

An inmate also has the ability to access the law library, however, those individuals housed in segregation or IMU will be provided with reference materials for use in their cells. (*Id.*). There is a computer linked to the law library that inmates housed in IMU may use to obtain reference materials. (*Id.*). An inmate who is posing a security risk may not be allowed to use the law library computer. (*Id.*). An inmate may be given emergency access to materials if the inmate can show that there is a documented or statutorily court-imposed deadline or that his case will be prejudiced if not provided access. (*Id.*). A specific form needs to be completed before the Superintendent can grant emergency access to the law library. (*Id.*). An offender may go to the law library when he is on emergency access; however, if he is not on emergency access and he appears at the law library

1    without being on call-out, he may be infracted for being out of bounds. (*Id*.).

2        Plaintiff's cell was searched on many occasions, including March 17, 2005. (Dkt. # 18, p.

3    7). At that time, it was noted that he had four legal materials boxes when he was only permitted to

4    have one. (Dkt. # 121, Exh. 4, Attach. A). The three extra boxes were placed in storage for his use.

5    (*Id*.). Plaintiff's cell was also searched on April 13, 2005, and items were seized because they were

6    in the legal materials box but they were not legal materials; however, they were returned to the

7    Plaintiff. (*Id*., Exh. 4, Attach. B). Plaintiff did not receive an infraction for this. (*Id*.). The Plaintiff

8    was also informed, by letter, that he was permitted to switch out legal materials in the boxes seized

9    and stored on the unit twice a week. (*Id*., Exh. 4, Attach. C).

10

11       Plaintiff alleges that he requested and received emergency access to the law library for much

12   of 2005. (Dkt. # 18, p. 4, Exh. 4). The times when Plaintiff did not have emergency access to the

13   law library were when Plaintiff failed to timely file successive requests for emergency access. (*Id*.).

14   If the Plaintiff arrived to use the law library when he did not have emergency access and he was not

15   on the call-out to use the law library, he was infracted for being in the wrong place. (*Id*).

16

17       Plaintiff alleges that Defendants Strong, Scott, Shanahan and Waddington knew of

18   Plaintiff's March 25, 2005 deadline to file a response to a motion for summary judgment in Case

19   No. 04-5287RBL, at the time they searched his cell and confiscated three of his legal boxes on

20   March 17, 2005 and on April 13, 2005, left one legal box which had "absolutely no barring [sic]

21   [on] plaintiff's case regarding Cause No. C04-5287-RBL." ((Dkt. # 178, p. 15). This, Plaintiff's

22   argues, impeded his ability to timely file an opposition to the defendants' motion for summary

23   judgment in that case and ultimately, lead to dismissal of his case. In addition, Plaintiff argues that

24   he attempted to file a request for an extension due to the defendants' failure to provide him with

25   discovery responses, but without access to his legal materials, he was unable to do so. (Dkt. # 178,

26

27

28   REPORT AND RECOMMENDATION - 5

Attach 2, p. 8; Dkt. # 18, p. 5, ¶ 21; Dkt. # 178, pp. 15-16).

Plaintiff also argues that he was unable to file a timely reply brief in opposition to the defendants' motion for summary judgment in Case No. C04-5161FDB.  (*Id*., p. 19).  Because he was unable to file a reply brief, the Court only considered what was filed in Dkt. # 102, and determined that the Defendants were entitled to qualified immunity.  (*Id*.).

Finally, Plaintiff complains that his requests for legal access while he was confined in the IMU were denied, even though he was pre-approved for emergency access to the law library.  (Dkt. # 178, Attach 2, p. 6; Dkt. # 178, p. 16).

**C.    Searches of Plaintiff's Cell - DOC Policy 420.320**

Inmates' cells are subject to random searches for contraband. (Dkt. # 121, Exh. 2, Attach. E, DOC Policy 420.320, *Searches for Facilities*). Inmates do not need to be present during these searches. (*Id*). Legal materials are also searched for contraband. (*Id*). Items that are considered contraband are confiscated from the cell. (*Id*.). Contraband is another inmate's property or unauthorized medications.  (*Id*., Exh. 2, Attach. D).  The Plaintiff's cell and legal material were searched on numerous occasions, including March 17, 2005, April 18, 2005, and June 14, 2005. (Dkt. # 18, p. 7).  On one occasion, his excess legal materials were removed because the materials violated DOC's one box limit. On another occasion, certain items were removed from the Plaintiff's cell because they did not appear to be his and he could not show that they were his.  (*Id*.).  These items were confiscated pursuant to DOC policy. (*Id*.).

Plaintiff alleges that Defendants' search of his cell and decision to consolidate his legal property boxes lead to his injuries because he could not properly litigate in his three cases as set forth in paragraph B above.  In addition, Plaintiff alleges that personal hygiene items to which he claims a liberty interest were improperly confiscated from his cell.  (Dkt. # 18, p. 9-10).

REPORT AND RECOMMENDATION - 6

## II.  STANDARD OF REVIEW

In examining Defendants' motion, the Court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

## III.  DISCUSSION

**A.     Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff

REPORT AND RECOMMENDATION - 7

fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil

Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That

plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself,

necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S.

344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon

which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A

defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory

responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58

(1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have

personally participated in the acts alleged. *Id*.

### 1.    Access to Courts Claim

The touchstone of an access to courts claim is whether the access to courts program provides

inmates with "meaningful access to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This is

not a bright line test and an access to courts program is "evaluated as a whole to ascertain its

compliance with constitutional standards." *Bounds v. Smith*, 430 U.S. 817, 832 (1997). In matters

such as development of access to courts programs, courts are to defer to the expertise of prison

officials. *Lewis*, 518 U.S. at 361 (prison officials are entitled deference with regard to access to

courts programs). Inmates' rights of access to the courts are not unlimited, and the time, place and

manner in which they are provided can be regulated. *Lindquist v. Idaho State Bd. of Corrections*,

776 F.2d 851, 858 (9th Cir. 1985) (discussing access to the law library).

Before an inmate can bring a lawsuit for an access to courts violation, the inmate must have

standing. In *Lewis*, the Supreme Court held that to have standing to bring an access to courts claim,

REPORT AND RECOMMENDATION - 8

an inmate must allege both that he was denied access to legal materials or advice and that this denial harmed his ability to pursue non-frivolous legal action, that is, the inmate must show actual injury. To show actual injury the inmate must, for example, show that because of the inadequate library facilities or because of the prison regulations governing access and use of the library facilities, the inmate was unable to file a complaint or that the inmate lost a case because the inmate could not timely file critical pleadings. *Id*. at 351.

Demonstration of actual injury does not automatically result in a right of access violation. *Lewis*, 518 U.S. at 353.  A prison regulation impinging on a inmate's constitutional rights, even a right of access to courts, is valid if it is reasonably related to legitimate penological interests. *Id*.  In addition, a showing of an inability to file a particular pleading is insufficient to establish a violation of access to the courts.  The litigation must actually be damaged. *Lewis v. Casey, supra*. Thus, Plaintiff must establish the existence of that damage. Mere conclusory allegations are insufficient to make that showing. *In re Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990); *In re Rice*, 118 Wn.2d 876, 855-886, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S. Ct. 421 (1992). Delays in providing legal services are not of a constitutional magnitude in and of themselves. Even when such delays result in actual injury, if the delay is the result of legitimate penological interests, there is no constitutional violation. *Id*. Even the inability to file a particular pleading is insufficient to establish a violation of access to the courts. *Lewis v. Casey, supra*.

Plaintiff claims Defendants violated his constitutional right of access to courts by failing to process his legal mail, by not allowing him access to his legal materials and the law library. Specifically, he claims that he was damaged by Defendants' actions in that he was unable to timely file an opposition to a motion for summary judgment or request an extension due to defendants' failure to provide him with discovery responses in Case No. C04-5287RBL; properly serve a

1    defendant in his habeas litigation in Case No. C04-5785FDB; and, to file a reply brief to the

2    defendants' motion for summary judgment on qualified immunity, in Case No. C04-5161FDB.

3    (Dkt. # 178, p. 17-19, Attach. 2).

4                   **a.    Processing of Plaintiff's Legal Mail**

5
6            Plaintiff alleges that Defendants Jimenez and Rohre deliberately refused to process his

7    outgoing legal mail on October 26, 2005.  (Dkt. # 18, p. 8; Dkt. # 178, p. 17).  However, Plaintiff

8    states that he managed to have another officer assist him and he filed his pleadings before the

9    "12:00 o'clock deadline."  (Dkt. # 178, Attach. 2, Exh. 43).

10           Plaintiff also claims that as a result of Defendants' actions, he could not comply with a

11   deadline in his habeas case, Case No. 04-5785FDB and he could not seek an extension of time for

12   additional discovery in Case No. C04-5287RBL, which led to the Court's dismissal of that case.

13   (Dkt. # 178, p. 17).  Defendants counter that Plaintiff sought to have his legal mail processed on the

14   night shift but failed to properly fill out the forms in a timely manner and staff could not take the

15   time to assist him with that mail. (Dkt. # 121, Exh. 3).  In addition, Plaintiff does not allege that he

16   was not able to mail the document the following day.  *Id*.  Furthermore, because Plaintiff was

17   attempting to have a document mailed on the night shift, it would still have a post mark of October

18   27, 2005. Thus, Plaintiff cannot show that the refusal to process his legal mail on the night shift

19   could have affected any deadline in any court case or that his mail would have been mailed any

20   earlier had it been processed the next day.

21
22
23           This Court's independent review of Case Nos. C04-5785FDB and C04-5287RBL indicates

24   that there were no pending deadlines in either case around October 27, 2005.

25           In C04-5785FDB, Plaintiff's petition for writ of habeas had been denied as time barred on

26   July, 12, 2005.  (Dkt. # 39).  On July 25, 2005, Plaintiff filed a notice of appeal.  (Dkt. # 41).  On

27

28   REPORT AND RECOMMENDATION - 10

July 25, 2005, Plaintiff filed a motion for certificate of appealability.  (Dkt. # 42).  On July 27, 2005, Plaintiff filed a notice regarding his motion for certificate of appealability.  (Dkt. # 44).  On August 11, 2005, Plaintiff filed a motion for leave to file an overlength reply brief in support of his motion for certificate of appealability.  (Dkt. # 48).  On August 24, 2005, the Court denied Plaintiff's motion for certificate of appealability.  (Dkt. # 50).  On August 26, 2005 an appeal notification packet was sent to the Court of Appeals by the District Clerk.  (Dkt. # 52).  On October 28, 2005, the Court of Appeals issued its mandate denying Plaintiff's motion for certificate of appealability.  (Dkt. # 53).  On November 29, 2005, Plaintiff filed a motion for relief from judgment in the District Court.  (Dkt. # 54).  Between the end of August and October 28, 2005, when the Court of Appeals issued its decision on Plaintiff's motion, there were no pending deadlines in this case.

In C04-5287RBL, by June of 2005, Plaintiff's federal claims had been dismissed with prejudice.  (Dkt. # 59).  In October, 2005, the only activity reflected on the docket is transmission of the Clerk's record on appeal to the Court of Appeals by the District Clerk.  (Dkt. # 73).  Therefore, Plaintiff's claim that any delay in mailing prevented him from seeking an extension of time for additional discovery is simply incorrect.

Plaintiff further argues that on November 14, 2005, he filed a motion for reconsideration with the Ninth Circuit (in Case No. C04-5785), which the "court has determined was never filed" and dismissed his case.  (Dkt. # 178, pp. 16-17).  Plaintiff states that Defendant Jiminez "conducted his outgoing mail on this particular subject."  (*Id*.).  The docket in Case No. 04-5785 includes a certificate of mailing by Plaintiff of a motion for reconsideration to the Court of Appeals (attached as Exhibit 8 to Plaintiff's motion for relief from judgment).  (Dkt. # 55).  However, there is no evidence before the Court, other than Plaintiff's unsupported heresay statement, that the Ninth

Circuit never received or filed Plaintiff's motion.

Viewed in the light most favorable to Plaintiff, these facts fall short of showing a denial of access to courts claim.  There is simply no evidence that he was harmed in his ability to pursue his legal actions.[3]  In addition, Plaintiff admits that he was able to file the pleadings with the assistance of another officer "before the 12:00 o'clock deadline."

Accepting Plaintiff's allegations and averments as true, the undersigned concludes that there is not sufficient evidence to support a claim of denial of access based on Plaintiff's allegation that Defendants' failed to process his legal mail.

### b.    Access To Law Library

Plaintiff declares that on January 5, 2005, he was approved for Emergency Access to the law library at the CBCC and at the SCCC, which he renewed virtually every month from January 5, 2005 through May 17, 2006.  (Dkt. # 178, Attach. 2, Exh. 5; Dkt. # 18, Exh. 4).   Plaintiff argues that SCCC policy requiring him to go through a counselor in order to obtain photocopies for items needed in litigation hindered his access to the courts.  (*Id.,* Exh. 7).  In addition, Plaintiff states that in Case No. C04-5161FDB (Dkt. #57), he was ordered to serve a defendant and could not, but the party waived service in order to appear.  (Dkt. # 178, p. 18).

Accepting Plaintiff's allegations and averments as true, the undersigned concludes that there is not sufficient evidence to support a claim of denial of access based on Plaintiff's allegation that Defendants' denied his access to the law library.  Plaintiff's evidence reflects that he was approved

---

[3]In his Declaration, Plaintiff refers to numerous grievances he filed in support of his claims that Defendants' violated his constitutional rights.  (Dkt. # 178, Attach. 2).  The Court limited its focus here on harm allegedly suffered as a result of Defendants' actions constituting the claims set forth in Plaintiff's Amended Complaint.  For example, Plaintiff refers to a grievance in which he complained of racial discrimination and intentional "targeting" of black inmates.  (Dkt. # 178, Attach. 2, p. 7).  Plaintiff has not plead a claim of racial discrimination nor presented any summary judgment evidence to support such a claim.

REPORT AND RECOMMENDATION - 12

for Emergency Access to the law library at the CBCC and at the SCCC for almost every month from January 5, 2005 through May 17, 2006.  More importantly, and as is discussed more fully herein, there is no summary judgment evidence that Plaintiff was unable to meet any court imposed deadlines.   Plaintiff's argument that he was unable to serve Defendant Tiapula in Case No. C04-5161 due to DOC's photocopy policy is also without merit.  The record reflects that Defendant Tiapula voluntarily waived service requirements and entered her appearance in the matter.  (Dkt. # 116, 117).

<b>c.        Access to Legal Materials</b>

The Plaintiff is correct that he is only allowed one box of legal materials at any given time, absent an exception. (Dkt. # 121, Exh. 2, Attach. C).  He may be able to access other legal materials provided he can show that he had a court imposed deadline. (*Id*).  Plaintiff is also permitted to switch materials as needed and was allowed to do so two times a week. (Dkt. # 18).

Plaintiff alleges that because his legal property was confiscated on March 17, 2005 and Defendant Strong consolidated Plaintiff's legal boxes on April 13, 2005, Plaintiff was unable to timely file a reply brief to Defendants' opposition and cross-motion for summary judgment to his motion for summary judgment filed on February 22, 2005.  (*Id*.)

Turning again to review the Court's docket in Case No. C04-5161FDB, the Court finds that Plaintiff's allegation that he was unable to timely file a reply brief to Defendants' opposition and cross-motion for summary judgment to his motion for summary judgment filed on February 22, 2005, to be without merit.  Following the alleged confiscation of his legal materials on March 17, 2005, Plaintiff filed various documents in Case No. C04-5161FDB, including a letter regarding service of the Amended Complaint (Dkt. # 75), a motion for consideration with numerous attachments (Dkt. # 77), a motion for service and declaration in support with numerous exhibits

REPORT AND RECOMMENDATION - 13

(Dkt. # 81 and 82), a motion for extension of time to complete discovery (Dkt. # 87), notice to take depositions (Dkt. # 88), motion for an extension of time to file an objection to a report and recommendation regarding Plaintiff's motion for preliminary injunction (Dkt. # 87), motion for appointment of counsel, memorandum and declaration (Dkt. # 95, 96 and 97), and response to defendants' objections to motion for extension of time (Dkt. # 99).  The magistrate's report and recommendation on Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment was not issued until May 25, 2005 (Dkt. # 102).  Plaintiff did not file a reply in the interim nor did he seek an extension of time to file a reply, although he filed numerous pleadings between March 17, 2005 and May 25, 2005.

The undisputed evidence reflects that during the time Plaintiff was held to DOC policy allowing only one box of legal materials in a cell, he was permitted to exchange legal materials as needed up to three times a week.   More importantly, the record reflects that Plaintiff was not denied the right to access the courts, but was actively engaged in litigating case No. C04-5161FDB.

**2.     Seizure of Personal Items**

Plaintiff alleges that his cell was wrongfully searched and that his personal hygiene items were wrongfully seized.  (Dkt. # 18, pp. 9-10).

We begin with the general proposition that prisoners have no Fourth Amendment right of privacy in their cells.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996); *Portillo v. United States D. Court*, 15 F.3d 8919, 823 (9th Cir. 1994) (per curiam); *Nakao v. Rushen*, 766 F.2d 410, 412 (9th Cir. 1985).   In addition, DOC Policy 420.320 provides that inmates' cells are subject to random searches for contraband and that inmates do not need to be present during these searches.  (Dkt. # 121, Exh. 2, Attach. E).  Items that are considered contraband are confiscated from the cell.  (*Id*.).  Contraband may be another inmate's property or

REPORT AND RECOMMENDATION - 14

1  unauthorized medications.  (*Id*., Attach. D).

2       The parties agree that Plaintiff's cell and legal materials were searched on numerous

3  occasions, including March 17, 2005, April 18, 2005 and June 14, 2005.  (Dkt. # 18, p. 7; Dkt. 121,

4  p. 5).  However, Plaintiff claims that a genuine issue of material fact exists as to whether he was

5  present in his cell at the time that Defendant Strong searched his cell.  (Dkt. # 178, Attach. 2, p. 11).

6  Other documents attached to Plaintiff's response indicates that Plaintiff was present during the

7

8  search.  (*Id*., Attach. 2, Exh. 24).

9       While Plaintiff may dispute his whereabouts at the time of the search, the material issue at

10  hand is what, if any, privacy interest is at stake.  As noted in *Hudson*, prisoners have no right of

11  privacy in their cells.  Plaintiff's reliance on *Bell v. Wolfish*, 441 U.S. 520 (1979) does not lead to a

12  contrary conclusion.  In fact, the Supreme Court held in *Bell*, that a pretrial detainee has no Fourth

13  Amendment right to be present when his cell and belongings in it are searched. *Bell,* 441 U.S. at

14  555-57.   The test for determining the existence of a liberty interest is to examine the hardship

15  caused by the prison's challenged action relative to "the basic conditions" of life as a prisoner.

16  *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).   Thus, a liberty interest

17  includes only "freedom from restraint which ... imposes atypical and significant hardship on the

18

19  inmate in relation to the ordinary incidents of prison life." *Id.*

20

21       Whether Plaintiff was present in his cell is not material to whether the search of his cell was

22  an atypical, significant deprivation in which a state might conceivably create a liberty interest.

23  DOC regulations provide that inmates' cells are subject to random searches and are part of routine

24  security measures.  Plaintiff, his cell and all of his other possessions were already subject to

25  inspection at any time and for any or no reason.  Thus, a failure to permit the Plaintiff to be present

26  when his cell and belongings are searched does not "present the type of atypical, significant

27

28  REPORT AND RECOMMENDATION - 15

deprivation in which a state might conceivably create a liberty interest." See *Mitchell*, 75 F.3d at 522.

Moreover, the Due Process Clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Even if Defendants intentionally destroyed Plaintiff's personal property, the Due Process Clause is not violated as long as Plaintiff has an adequate post-deprivation remedy under state law. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984). If common law remedies such as a negligence or conversion claim are available under state law, then Plaintiff has an adequate post-deprivation remedy. *Id.* at 534-35.

With regard to Plaintiff's personal hygiene items then, even if Defendant Strong's actions were intentional, there is no violation of the Due Process Clause as a matter of law as Plaintiff could have pursued a claim under Washington state law in negligence or for conversion. *See, e.g., Folsom v. Burger King*, 135 Wn.2d 658, 958 P.2d 301 (1998)(negligence); *Washington State Bank v. Medalia Healthcare, L.L.C.*, 96 Wn. App. 547, 984 P.2d 1041 (1999) (conversion).

Viewing all of the undisputed facts in a light most favorable to the Plaintiff, the undersigned concludes that there has been no violation of Plaintiff's due process rights and recommends that Defendants' summary judgment motion be granted on these claims.

**B.   Plaintiff's Claim of Retaliation**

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (*citing Resnick v. Hayes,* 13 F.3d

REPORT AND RECOMMENDATION - 16

443, 449 (9th Cir.2000).

Plaintiff alleges that all of the Defendants retaliated against him because he filed a previous lawsuit against Defendant Waddington.  (Dkt. # 18, p. 12).  Plaintiff argues that Defendants do not dispute that at the time in question his lawsuit against Defendant Waddington was pending and that he filed numerous grievances regarding actions taken by various staff "constituting violation of policy and constitutional rights."  He also asserts that Defendants conducted unlawful searches and seizures from him while he was approved for emergency access to the law library and deprived him of access to his legal materials.  (Dkt. # 178, p. 24).

As noted above, however, the record does not support a finding that Defendants violated Plaintiff's constitutional right to access to the courts.  Therefore, as there is no "chilling" of Plaintiff's exercise of his First Amendment rights, the undersigned recommends that this claim be dismissed as a matter of law.

**C.      Plaintiff's Request for Injunctive Relief**

Plaintiff requests that an injunction issue in this action against all named Defendants "to have such penalties and sanctions to be executed under the State of Washington's RCW 43.01.125 stating 'Performance Warrants Termination for Employment', (RCW) 42.20.100 stating 'Failure of Duty by Public Officials', (RCW) 42.01.125," and that such injunction force the Defendants to pay the damages to which Plaintiff alleges he is entitled.  (Dkt. # 18, pp. 13-14).

Generally, a prisoner's release or transfer from a prison will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986). To secure injunctive relief, a plaintiff must demonstrate "a very significant possibility" that

REPORT AND RECOMMENDATION - 17

future harm will ensue. *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990). The burden of showing a likelihood of a recurrence of harm is "firmly on the plaintiff." *Id*. at 1251.

Plaintiff lacks standing to pursue his claim for injunctive relief he is no longer housed at the SCCC and his return to that facility is entirely speculative. (*See, e.g.,* Dkt. # 186, Exh. 1, Attach. C). Because Plaintiff's action has not been certified as a class action, his transfer to a different prison and subsequent release from prison renders his claim for injunctive relief moot. In addition, Plaintiff cannot show that he is likely to suffer irreparable injury if relief is not granted because the persons against whom he seeks injunction no longer have contact with him. As Plaintiff also cannot show that there is any immediate likely threat regarding his access to legal materials or the courts; he does not have standing to request a permanent injunction.

Accordingly, the undersigned recommends that Plaintiff's claims for injunctive relief be dismissed.

**D.    Qualified Immunity**

Defendants argue that they are, in any event, entitled to qualified immunity. As the Court has determined that Plaintiff has not demonstrated a violation of his constitutional rights, this issue need not be reached. *See e.q., Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

### IV.  CONCLUSION

For the reasons stated above the Court should **GRANT** the motion for summary judgment of Defendants (Dkt. # 121). A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time

REPORT AND RECOMMENDATION - 18

limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on

**February 15, 2009**, as noted in the caption.

DATED this  18th  day of January, 2008.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19